# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LEDA MOX; and
ARMSTRONG EQUINE MASSAGE
THERAPY, LLC,

        Plaintiffs,

v.

DENNIS OLSON, JR., in his official
capacity as Commissioner of the Minnesota
Office of Higher Education,

        Defendant.

Case No. 0:23-cv-03543

## COMPLAINT

## INTRODUCTION

This civil rights lawsuit seeks to vindicate the right to teach job skills without first being required to obtain government permission. This suit seeks declaratory and injunctive relief against enforcement of a Minnesota law, the Minnesota Private and Out-of-State Public Postsecondary Education Act (the "Act"), Minn. Stat. §§ 136A.61 *et seq.*, which makes it illegal for Leda Mox, through her equine massage business, to teach and certify others without approval.

Minnesota cannot constitutionally apply the Act's requirements to Leda's business. Teaching (including teaching job skills) is speech. If Leda taught personal development, modeling, acting, or even horseback *riding* classes, the Act would not apply, and she could earn a living as she wishes. But she can't. Application of the Act to businesses like Leda's is a content-based restriction on speech that violates the First Amendment rights of those who wish to teach equine massage and those who wish to learn it.

## JURISDICTION AND VENUE

1.     Plaintiffs bring this civil-rights action under the First and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(3).

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1)-(2). Plaintiff Leda Mox is a Minnesota resident, and her business is a Minnesota corporation. Upon information and belief, defendant operates in his official capacity within the state of Minnesota.

## THE PARTIES

**Plaintiffs**

4.     Plaintiff Leda Mox, an individual, is a U.S. citizen who lives in Becker, Minnesota. She is the founder and sole instructor of Armstrong Equine Massage, LLC.

5.       Armstrong Equine Massage, LLC ("Leda's school"), a Minnesota corporation located in Becker, Minnesota, is an award-winning equine and canine massage company providing massage services, clinics, training, and certification to those who wish to learn the technique of equine massage.

6.       As a "private career school," Leda's school is subject to regulation under the Act. The Act prohibits Leda's school from teaching equine massage clinics without first obtaining a license from the Minnesota Office of Higher Education.

**Defendant**

7.       Defendant Dennis Olson, Jr. is Commissioner of the Minnesota Office of Higher Education (the "Office"). He is sued in his official capacity only.

8.       Defendant Olson is vested by statute with the powers and duties of the Office, including enforcement of the Act.

9.       Defendant Olson therefore is responsible for enforcing the statutes that prohibit Leda's school from teaching equine massage—to adults who wish to learn it— without a license.

10.      Defendant's enforcement of the Act as applied to Leda has harmed Leda's and her school's First Amendment Rights.

## FACTUAL BACKGROUND

**Equine Massage Is a Safe, Well Recognized Practice, With Numerous Benefits for Horses**

11.      Plaintiff Leda Mox is an expert in equine massage.

12.     Equine massage is recognized nationwide as a form of animal therapy and has been practiced for decades.

13.     Animals require massage for a variety of reasons, many of which are the same reasons that humans get massages: to alleviate sore muscles, to prepare for or recuperate following athletic events, or simply to ease tension.

14.     Horses are thought to particularly benefit from massage, because skeletal muscle makes up approximately 60 percent of a horse's mass, compared to 30-40 percent for healthy humans.

15.     Equine massage therapy uses a variety of massage techniques designed to stimulate blood flow, heal injured muscles, lessen pain, and improve flexibility in horses.

16.     The techniques are hands on, non-invasive, and are not veterinary care, though equine massage clinics will work closely with veterinarians.

17.     There is no national regulatory body for equine massage therapists.

18.     Minnesota does not require a license to practice equine massage.

19.     Although equine massage was historically something that people taught informally, a number of private schools across the country now offer certifications in equine massage.

**Plaintiff Leda Mox Has Turned Her Passion for Horses into a Thriving Business, Armstrong Equine Massage**

20.     Leda Mox grew up on a small farm and started riding horses at a young age. She has been around horses for most of her life.

4

21.     She earned a B.S. in equine science from the University of Minnesota in 2007.

22.     She has been a certified Equine Sports Massage Therapist since 1997, when she received her certification from Equissage in Round Hill, Virginia. At the time, this was the only certification program she could find in the country, and Leda skipped her high school graduation to attend Equissage's classes.

23.     Leda founded Armstrong Equine Massage, LLC in 2013 and has operated continuously at her farm in Becker, Minnesota ever since.

24.     Leda has been teaching equine massage to others for ten years. Her clients range from horse owners who wish to learn quick and simple tricks for their horse's comfort to clients who, like her, want to operate an equine massage business. Approximately eight to ten percent of her graduates work as equine massage therapists full time, and approximately fifteen percent work part time.

25.     Leda and her clients have worked with veterinarians and horse trainers to help turn auction horses into race winners and get injured horses back on the correct path. Many of Leda's horses are geriatric and through her techniques she has been able to keep them active at over 30 years of age.

26.     When Leda first had a desire to teach these courses in 2012, she went to the Minnesota Department of Education to confirm she was within her rights to do so. At that time, they assured her that she did not need their permission or approval, and so she began developing her curriculum.

27.     Leda's school offers four different massage courses, ranging from an introduction class for horse owners wishing to care for their pet, to a master certification for professionals wishing to enter the equine massage business. Leda's school also offers additional one-on-one instruction.

28.     Leda's two introduction classes, "Introduction to Horse Massage" and "Horse Owners Class on Equine Massage" are each one-day classes designed to teach horse owners how to care for their pets. Students who enroll in these classes are not looking to become professional equine massage therapists. They include both recreational and horse trainers. In 2023, three students attended the introduction classes.

29.     Leda's other two classes are certification classes designed for aspiring professionals. These are two four-day long programs covering safety, advanced equine massage, equine anatomy, and other therapy techniques. Leda also teaches her students how to market an equine massage business and how to keep accurate client records. In 2023, thirty-three people graduated from Leda's certification classes.

30.     Certification requires passing a written test and completion of case studies. Students must work on ten horses and do at least two massages each—therefore, in 2023, Leda's thirty-three students have massaged over 300 horses that might not otherwise have received this care.

31.     Leda also offers one-on-one teaching by appointment. She taught two one-on-one certifications in 2023.

32.     In addition to her equine massage classes, Leda offers horseback riding and canine massage classes for a fee. She also offers equine massage services at her farm.

6

33.     Leda volunteers with the local 4-H, offering free classes in things like rodeo events, goat tying, horse showing, and cattle sorting. She will often lease additional animals for these events.

34.     Proceeds from class fees go right back into Leda's business, paying for the mortgage on the farm, facilities, care for the animals, and other related costs.

35.     The classes are typically held at Leda's farm in Becker, Minnesota, but Leda will occasionally host clinics or classes at other locations.

36.     Leda lives on a large farm, surrounded by acres of farmland and horseback riding trails. Her farm has a large stable barn where she keeps her horses. She currently keeps thirteen horses and may lease additional horses to have up to twenty per lesson for students to practice.

37.     Leda wants to teach her equine massage courses, at all levels, to paying students who wish to learn equine massage.

38.     Through her years of experience and her own certification, Leda has already developed a curriculum for all of her classes and has been providing that curriculum to willing and paying students for years.

39.     Leda's website (http://www.armstrongequinemassage.com) provides students, prospective students, and the public with all information regarding her location, contact information, background and experience, course offerings, including dates, costs, and requirements for certification.

**The Office Has Now Determined that Leda Requires a License to Teach Others About Equine Massage**

40.      In March 2023, Minnesota authorities sent Leda a letter informing her that she could no longer teach horse massage without a license, despite having done so for ten years, to over 400 students.

41.      In earnest, Leda began looking into what she needed to do to obtain a license and operate in compliance with the Act.

42.      She learned that these requirements are onerous, placing a heavy burden on her freedom of speech and her freedom to operate her business and train her students as she sees fit.

43.      She also learned that complying with the Act's requirements would cost a great deal of money, meaning she would need to raise her prices. If she were to raise her prices, her business would struggle to remain competitive.

44.      Thus, Leda is concerned that complying with the Act's requirements could cost her the business she has spent years building.

**Minnesota's Complex, Time-Consuming, Expensive, and Subjective Application and Licensure Requirements Place Heavy Burdens on Speech**

45.      The Office of Higher Education now says that Leda's school is subject to regulation under the Minnesota Private and Out-of-State Public Postsecondary Education Act of 2007 (the "Act"), Minn. Stat. §§ 136A.61 *et seq*.

46.      The Act purports to regulate any private career school, defined as "a person who maintains, advertises, administers, solicits for, or conducts any program at less than an associate degree level" and is not specifically exempted. *Id.* § 136A.821(5).

47.     Leda, through her school, operates a "private career school" under the Act because she maintains, administers, advertises for, and conducts her equine massage classes and certification programs, and these classes do not require an associate degree.

48.     Leda operates a "career school" because at least some portion of her teaching is for students who want to learn equine massage for the purpose of starting their own business. In that way, her school is "vocational" under the Act.

49.     Leda also teaches students who want to learn equine massage for other purposes such as caring for their own pets. This teaching is "avocational," as are her lessons in horseback riding and her 4-H classes.

50.     Although the Act exempts schools engaged in "purely" avocational teaching, *id.* § 136A.833(10), the exemption does not apply to schools like Leda's, which offer both vocational and avocational instruction.

51.     A private career school may not maintain, advertise, solicit for, administer, or conduct any program in Minnesota without first obtaining a license from the Office. *Id.* §136A.822(1).

52.     Thus, the school and Leda are subject to the requirements of the Act.

53.     To obtain a license, the Act requires a private career school to complete a burdensome, thirty-page application form.

54.     Much of the information on the form does not apply to Leda, who is the sole owner of her business and the sole instructor. The form requires information including, but not limited to:

a. Schools must provide information on their controlling officers, members, managing employees and directors, and the qualifications of all instructors and supervisors. *See id.* § 136A.822(4)(1), (6).

b. Schools must provide a list of the specific programs which will be offered and the specific purposes of the instruction, the place or places where the instruction will be given, a listing of the equipment available for instruction in each program, and the maximum enrollment to be accommodated in each program. *See id.* § 136A.822(4)(2)-(5).

c. Schools must provide financial documents related to their most recently completed fiscal year, namely annual gross revenues, gross income earned in the preceding year from student tuition and fees, financial statements (audited if requested by the office), balance sheet, income statement, and adequate supporting documentation prepared and certified by an independent accountant, and the school's most recent compliance audit. *See id.* § 136.A822(4)(7), (10).

d. Schools must provide "copies of all media advertising and promotional literature and brochures or electronic display currently used or reasonably expected to be used." *Id.* § 136A.822(8).

e. Schools also must provide copies of all enrollment agreement forms and contract forms. *Id.* § 136A.822(9). This provision does not specify whether the contract forms referred to pertain to the student enrollment or contracts of the business in general.

10

    f.   Schools may also be requested to provide "other information as the office may require." *Id.* § 136A.822(4). This provision does not elaborate on what that other information might be.

55.    In addition to the application, the Act states that the Office will not issue a license unless the applicant files a corporate surety bond with the office, in an amount equal to ten percent of the preceding year's net revenue collected from all sources, but "in no event less than $10,000." *Id.* § 136A.822(6).

56.    Failure to post the required bond may result in denial of the school's license. *Id.*

57.    Further, each license application must be accompanied by an application fee, and the fee must be paid annually to maintain the school's license. *Id.* § 136A.824. The current initial licensure fees are $2,500, plus $500 for each additional program offered by the school.

58.    The license must be renewed annually. *Id.* §§ 136A.822(9), .823. The current renewal fees are $1,150, plus $200 for each additional program with a maximum renewal licensing fee of $2,000. *Id.* § 136A.824.

59.    The Act does not specify how the Office determines what constitutes a "program." Therefore, if the Office determines that each of Leda's classes are a different "program," she faces up to $4,500 in initial fees and $2,000 in annual fees just to teach her equine massage classes, and more if the Office includes her horseback riding and canine massage classes.

60.     The Office will only issue a license if it determines that the school meets

certain standards required by the Act. *Id.* § 136A.822(8).

61.     Many of the "standards" are inapplicable or are not suited to businesses like

Leda's, where she is the only instructor, teaches only a handful of classes per year, and

certifies only thirty to forty clients. The form requires information including, but not

limited to:

    a.  The school must demonstrate that it has a "sound financial condition,"

       with significant resources available to meet its financial obligations,

       provide adequate service to its students, and to support itself. This

       includes the resources to refund all tuition in the event of dissolution or

       a justifiable claim for refund. *See id.* § 136A.822(8)(1).

    b.  The school must have "satisfactory facilities with sufficient tools and

       equipment and the necessary number of work stations to prepare

       adequately the students currently enrolled, and those proposed to be

       enrolled" and employ "a sufficient number of qualified teaching

       personnel to provide the educational programs contemplated," including

       "an organizational framework with administrative and instructional

       personnel to provide the programs and services it intends to offer." *Id.*

       § 136A.822(8)(2)-(4).

    c.  The Office must determine whether "the quality and content of each

       occupational course or program of study provides education and

adequate preparation to enrolled students for entry level positions in the occupation for which prepared." *Id.* § 136A.822(8)(5).

62.     The Act does not, however, provide for any criteria by which to assess whether the course or program of study is adequate.

63.     Prior to licensure, a private career school must also provide to the Office a "catalog, brochure, or electronic display" including a burdensome amount of information, much of which does not apply to businesses like Leda's offering, at most, four-day certifications. *Id.* § 136A.822(10). The required information includes, but is not limited to, the following:

a.  The catalog must contain the name and address of the private career school and its governing body and officials. *Id.* § 136A.822(10)(2).

b.  The catalog must contain a calendar showing legal holidays, beginning and ending dates of each course quarter, term, or semester, and other important dates. *Id.* § 136A.822(10)(3).

c.  The catalog must contain the school's policies and regulations about things like enrollment, entrance requirements, leaves of absences, make-up work, class cuts and tardiness, interruptions for unsatisfactory attendance, standards of progress, grading systems, grades considered satisfactory, conditions for unsatisfactory progress, any probationary period allowed, conditions of re-entrance for those dismissed for unsatisfactory progress, student conduct, and conditions for dismissal for unsatisfactory conduct. *Id.* § 136A.822(10)(4)-(7).

13

d. The catalog must contain a detailed schedule of fees including "charges for tuition, books, supplies, tools, student activities, laboratory fees, service charges, rentals, deposits, and all other charges" as well as the school's policy about refunds. *Id.* § 136A.822(10)(8)-(9).

e. The catalog must contain descriptions of the facilities and equipment, as well as a course outline and syllabus for each course, showing "course objectives, subjects or units in the course, type of work or skill to be learned, and approximate time, hours, or credits to be spent on each subject or unit." Additionally, the school must provide its policy about granting credits for previous education and transferability of any credits earned. *Id.* § 136A.822(10)(10)-(13).

f. The catalog also must contain a "procedure for investigating and resolving student complaints" and a notice to students about their rights under the Act. *Id.* § 136A.822(10)(14), (16).

64.    Much of the information required of this "catalog" is duplicative of the information required in the application, and to the extent that it is not, the information required is either inapplicable to a business like Leda's or is made available to all prospective students on Leda's website.

65.    If, after receiving all this information, the Office *still* determines, in its discretion, that a "fact-finding visit" or "outside consultant" is necessary for review of a license or license renewal application, the Office shall conduct such visit or employ such

consultant and *the school* is required to reimburse the Office or consultant for its costs. *See id.* § 136A.824(4).

66.     For continued licensure, the private career school also must maintain "a permanent student record for each student for 50 years from the last date of the student's attendance." *Id.* § 136A.822(12). "Records" include school transcripts, documents, and files containing student data about academic credits earned, courses completed, grades awarded, degrees awarded, and periods of attendance. *Id.*

67.     Pursuant to the Act, any private career school not in compliance with all its provisions, including licensure, shall be enjoined from operating. *Id.* §136A.831.

68.     The Commissioner of the Office may, in his discretion, assess fines for failure to comply with the Act's provisions, in an amount of $500 *per day per violation*. *Id.* § 136A.832 (emphasis added).

69.     The Act exempts several schools from its requirements, notably including private career schools of nursing, programs in the "fine arts," and programs providing instruction in personal development, modeling, or acting. *Id.* § 136A.833(2)(4), (12), (16). In other words, Leda can teach her students how to act, but not how to massage horses.

70.     The Act also exempts "private career schools … contracted for by … firms or corporations … for the training of their own employees." *Id.* § 136A.833(2)(9). In other words, schools may teach vocational courses—including Leda's—if employers rather than students contract for them.

71.     Additionally, the Act exempts from its requirements "private career schools engaged exclusively in the teaching of purely avocational, recreational, or remedial subjects, including adult basic education." *Id.* § 136A.833(2)(10). In other words, schools may teach horseback riding (which Leda does) without a license, but if a student wishes to learn equine massage, Leda is forced to comply with the Act. Schools may even teach equine massage, so long as they are teaching it to people who want to massage their own horses, rather than others'.

72.     Beyond the "minimum standards" noted above, nothing in the Act or its provisions provides any criteria by which the Office, in its discretion, should assess an equine massage program like Leda's or a curriculum teaching equine massage to others.

73.     Nothing in the Act requires the official tasked with approving licensure to have any particular or specialized knowledge in the subject matter of the school seeking a license.

74.     Upon information and belief, Leda, who has over twenty-five years of experience in equine massage and has been around horses for most of her life, is much more qualified than the Office to decide what curriculum, facilities, and testing methods are best for her students.

75.     As recently as April of this year, the Office has told Leda that her school must comply with all of the Act's requirements for private career schools in order to legally teach its equine massage certification programs to students.

**Because of Minnesota's Burden on Plaintiffs' Freedom of Speech, Plaintiffs Have Suffered Injury and Will Continue to Suffer Injury and Irreparable Harm**

76.     Requiring Plaintiffs and others like them to obtain permission from the Office to teach job skills to students who wish to learn them violates their rights under the First Amendment.

77.     Because the Office has told Leda that she and her school are subject to regulation under the Act, she has essentially been stopped from speaking until she complies with its terms.

78.     Requiring Leda to comply with the Act before she can speak about equine massage is a prior restraint on her speech, which violates her rights under the First Amendment.

79.     Requiring Plaintiffs to meet all the statutory requirements for a license to continue teaching a four-day certification that Plaintiffs have been teaching for ten years without issue or complaint— that is, to continue to speak about equine massage to others—violates Plaintiffs' rights under the First Amendment.

80.     If they want to continue speaking about equine massage to others, Plaintiffs must fully comply with the Office's burdensome application, inspection, and licensure procedures, which cost several thousand dollars and take dozens of hours of work.

81.     For example, Leda was told the Office requires a site inspection from the Fire Marshal. Leda has been told the Fire Marshal will not come out and do the inspection unless and until she installs an accessible bathroom near the stable barn where she teaches classes.

17

82.     If Plaintiffs were to comply with the Act in order to continue speaking to equine massage about others, the costs of compliance would need to be offset by a rise in program costs, which would make it difficult for Leda's school to remain competitive.

83.     Thus, Leda risks losing her business even if she complies fully with the Act's terms.

84.     These costs, in time and in money, are imposed on Plaintiffs solely because of the nature and content of their speech. If Plaintiffs taught subjects other than equine massage, which is a job skill, or if they taught job skills that are statutorily exempt from the Act, Plaintiffs would not be subject to these costs or regulations in order to continue speaking.

85.     Based on the terms of the Act, even if Plaintiffs comply with the numerous requirements and pay the licensing fees, the Office still may, in its sole discretion, determine that Leda's school does not meet the "minimum standards" required for licensure.

86.     The Act places unbridled discretion in the Office to approve or reject applications for new schools, and therefore to decide who gets to speak about what to whom, in violation of Plaintiffs' rights under the First Amendment.

87.     The Office does not subject exempted vocational or avocational schools to the same discretionary review standards.

88.     Thus, only because of the content of Leda's speech, she is subject to additional burdensome requirements and review at the unfettered discretion of the Office.

89.     The Act's differential treatment of vocational teaching, which is regulated, and avocational teaching, which is not, is content-based. *Compare id.* § 136A.821(5) (subjecting any "private career school" to the requirements of the Act), *with id.* § 136A.833(2)(1)-(18) (exempting certain schools such as avocational schools and schools that teach certain subjects from compliance with the Act).

90.     Through her school, Leda currently teaches avocational classes such as horseback riding, canine massage, Introduction to Horse Massage, and Horse Owners Class on Equine Sports Massage.

91.     But for the Act's requirements, in addition to these avocational classes, Leda would continue to advertise for and teach her vocational classes, such as her master classes and certification classes to students who wish to learn them.

92.     But for the Act's requirements, plaintiffs would be free to provide vocational education—namely, the teaching and certification of other aspiring equine massage professionals—at the school.

93.     Plaintiffs do not want to be required to complete the burdensome application, pay the expensive fees, install unnecessary facilities, provide unnecessary or inapplicable information, post a surety bond for thousands of dollars, and subject their business to arbitrary review just to exercise their right to speak nor do they want to be forced to choose between complying with the Act and committing a crime.

94.     Even if they were to agree to the application and licensing requirements, Plaintiffs do not want to be subject to an arbitrary and discretionary review of their

curriculum before being able to speak—particularly by those unqualified in the subject matter.

95.     Even if they were to agree to the application and licensing requirements, there is no guarantee that the Office will approve their curriculum, so Plaintiffs may still be subject to fines of up to $500 per day for violating the Act.

96.     But for the Act and the Office's interpretation of it, Plaintiffs would continue to provide vocational education—including classes and certification for equine massage—at Leda's school to any student who wishes to learn.

97.     But for the Act's restraint on Plaintiffs' speech, students wishing to learn equine massage would be able to do so and would not be deprived of useful information.

98.     If this Court enjoined Defendant from enforcing the Act against Plaintiffs, Leda would continue to teach and certify aspiring equine massage professionals at her school without fear of government intrusion or retribution.

99.     Leda is now concerned and afraid that teaching job skills at her school to students who wish to learn those skills would subject her to severe criminal and civil penalties, including fines of up to $500 per day.

100.     Defendant's actions have created a doubt that requires a resolution by this Court regarding Plaintiffs' right to communicate.

101.     Without a declaration regarding the constitutionality of requiring Plaintiffs to obtain a license from the Office before providing vocational education—including equine massage training and certification—to students who wish to learn, Plaintiffs are

concerned that the Office would consider this instruction illegal, even though such enforcement would violate the First Amendment.

102.     Without a declaration regarding whether Plaintiffs' equine massage certification classes are statutorily exempt under the Act, Plaintiffs are concerned that the Office would consider this instruction illegal if it continued to be available to students.

103.     If this Court declared that requiring Plaintiffs to obtain a license before providing vocational education was unconstitutional, the declaration would clarify Plaintiffs' rights and conclusively determine whether they could teach job skills—including equine massage training and certification—to students who wish to learn.

104.     If this Court declared that Plaintiffs' equine massage training and certification classes were statutorily exempt under the Act, the declaration would clarify Plaintiffs' rights and conclusively determine whether they could teach students equine massage and certify them to earn a living in the equine massage business.

**Minnesota's Requirements Lack the Required Justification Under the First Amendment**

105.     Defendant does not have a compelling or sufficiently important justification for infringing on Plaintiffs' right to speak—that is, to teach job skills to others.

106.     Defendant has no evidence that anyone has ever been harmed by Leda's equine massage classes, vocational or otherwise. In fact, no one has been harmed.

107.     Defendant has no evidence that Leda's classes pose any greater danger to consumers than do classes that purport to teach acting or personal development.

108.     Defendant does not have any evidence that Minnesota's licensing requirements—conditioned on satisfying the Act's numerous requirements and paying costly fees—advance any legitimate purpose that would not be equally well advanced by a less-burdensome system of voluntary certification, or enforcement of existing consumer protection laws against deceptive trade practices.

109.     Defendant does not have any evidence that subjecting Leda's curriculum to an arbitrary and discretionary review advances any legitimate purpose that would not be equally well advanced by a system of voluntary certification or enforcement of existing consumer protection laws against deceptive trade practices.

110.     Upon information and belief, Defendant has no evidence of harms that would arise if Leda and Leda's school did not need to satisfy the Act's requirements.

## CLAIM

### (First Amendment – Declaratory and Injunctive Relief)

111.     Plaintiffs incorporate and re-allege each allegation contained in Paragraphs 1 through 110 as set forth herein.

112.     The Act's general regulation of speech and messaging, subjecting some schools to licensing requirements while exempting others, is an unconstitutional content-based restriction on speech and violates the First Amendment.

113.     Defendant has no sufficient justification for subjecting different schools to different requirements based upon the content of their curriculum or message.

114.    Defendant has shown no evidence that the Act's general regulation of messages conveyed by vocational schools directly advances a substantial, important, or compelling government interest.

115.    Thus, these provisions on their face are unconstitutional violations of the First Amendment.

116.    Defendant's enforcement of the Act against Leda and Leda's school abridges Leda's and the school's freedom of speech. Teaching equine massage consists of communicating a message—meaning it is speech—and teaching equine massage as a vocational skill triggers coverage under the Act.

117.    Because Leda's school "maintains, advertises, administers, solicits for, or conducts" its equine massage training and certification classes at "less than an associate degree level," and is not specifically exempted from compliance with the Act, it is regulated under the Act. Minn. Stat. § 136A.821(5).

118.    The Act restricts Leda's school and Leda from teaching willing students the practice of equine massage.

119.    The Act purports to regulate vocational teaching in subjects such as equine massage, while exempting avocational teaching or vocational teaching in other subjects such as fine arts, acting, or modeling. *See id.* § 136A.833(2)(10), (12), (16). This distinction is a content-based regulation on speech.

120.    Defendant has shown no evidence that enforcement of the Act against Leda and against Leda's school substantially advances a compelling or important government interest.

121.     Preventing Leda and Leda's school from teaching equine massage to students willing to pay to learn it burdens more speech than is necessary to serve any government interest.

122.     Defendant's enforcement of the Act against Leda vests unbridled discretion in a government official with no knowledge or expertise in equine massage, or care for horses in general, and therefore is arbitrary and irrational.

123.     The Act thus violates Leda's and Leda's school's rights under the First and Fourteenth Amendments to the U.S. Constitution.

124.     Unless Defendant's enforcement of the Act is declared unconstitutional and enjoined, Leda and Leda's school will suffer irreparable harm in being able to teach students and those who wish to provide equine massage services to others, how to do so without risk of administrative action including fines, restitution, restraining orders, injunctions, and suspension of her ability to operate.

## REQUEST FOR RELIEF

As remedies for the constitutional violations just described, Plaintiffs respectfully request the following relief:

A.  Entry of judgement declaring that the application of Minn. Stat. § 136A.61 and §§ 136A.822-33 to persons, including plaintiffs, desiring to teach equine massage for a fee is unconstitutional in violation of the First Amendment.

B.  Entry of judgment declaring Minn. Stat. § 136A.61 and §§ 136A.822-33 unconstitutional to the extent that those provisions prohibit Leda's school

and Leda from teaching her equine massage curriculum to students and paying customers.

C. Entry of judgment declaring that Leda's school may teach its classes subject to all provisions of the Act except for Minn. Stat. § 136A.61 and §§ 136A.822-33.

D. Entry of a preliminary and permanent injunction prohibiting Defendant from enforcing Minn. Stat. § 136A.61 and §§ 136A.822-33 to the extent that these provisions prohibit Leda and Leda's school from teaching its equine massage curriculum to anyone who may wish to learn it.

E. An award of attorney's fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

F. Such further legal and equitable relief as the Court may deem just and proper.

Dated: November 16, 2023

Respectfully submitted,


 /s/ Anthony Sanders

Anthony Sanders (MN Bar No. 0387307)
INSTITUTE FOR JUSTICE
P.O. Box 315
Lindstrom, Minnesota
Tel: (703) 682-9320
asanders@ij.org


Jeffrey Redfern (MN Bar No. 394802)*
Bobbi Taylor (NJ Bar No. 435162023)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
jredfern@ij.org
btaylor@ij.org

*Pro hac vice motion to be filed*

*Attorneys for Plaintiffs*