UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEDA MOX and ARMSTRONG
EQUINE MASSAGE THERAPY, LLC,

                Plaintiffs,

v.

DENNIS OLSON, JR., in his official
capacity as Commissioner of the Minnesota
Office of Higher Education,

                Defendant.

Civil File No. 23-cv-03543 ECT/ECW

**DEFENDANT'S MEMORANDUM
OF LAW IN SUPPORT OF
MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

## INTRODUCTION

Defendant Dennis Olson, Jr., in his official capacity as Commissioner of the Minnesota Office of Higher Education, moves to dismiss Plaintiffs Leda Mox and Armstrong Equine Massage Therapy, LLC's Complaint in which Plaintiffs allege licensure by the Minnesota State Office of Higher Education would infringe on their First Amendment right to free speech. The Court should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief because Plaintiffs have no First Amendment right to avoid licensing statutes applicable to all private career schools in Minnesota.

## STATEMENT OF FACTS

The Office of Higher Education ("OHE") is the state agency in Minnesota with the authority to license and regulate private postsecondary education institutions and programs. Minn. Stat. Ch. 136A (2022 and Supp. 2023). Persons or entities that provide

training programs and formal recognition for less than an associate-degree level in Minnesota are subject to the Private Career School Act ("the Act"), Minn. Stat. §§ 136A.82–.834, and are required to be licensed by OHE, Minn. Stat. §§ 136A.822, subd. 1, unless they qualify for a statutory exemption under section 136A.833.

Specifically, "private career schools" are defined in statute to be persons or entities that offer "any program at less than an associate degree level."[1] Minn. Stat. § 136A.821, subd. 5. A "program" is broadly defined as "any course or grouping of courses that is advertised or listed in a private career school's catalog, brochures, electronic display, or other publications, or for which the private career school grants a formal recognition." Minn. Stat. § 136A.821, subd. 9. There are eighteen enumerated exemptions to the licensure requirement for private career schools. Minn. Stat. § 136A.833, subd. 2. These statutory exemptions may be generally categorized upon whether the institution is: separately regulated under another Minnesota law (section 136A.833, subd 2(1)-(8), (13)); providing classes not available to the general public (subdivision 2(6), (7), (9), (11), (13)); *de minimis,* (subdivision 2(15), (18)), or avocational (subdivision 2(10), (14), (16)). In short, a license is required if one collects tuition from the general public for teaching vocational skills and grants a formal recognition.

The purpose for requiring licensure and state oversight is consumer protection. The Minnesota Legislature expressly found "that the state can provide assistance and protection for persons choosing private institutions and programs, by establishing policies and

---

[1] Degree-granting institutions are separately regulated under the Minnesota Private and Out-of-State Public Postsecondary Education Act. *See* Minn. Stat. §§ 136A.61–.71.

procedures to assure the authenticity and legitimacy of private postsecondary education institutions and programs." Minn. Stat. § 136A.61.

Here, Plaintiffs admit that Plaintiff Minnesota Armstrong Equine Massage Therapy, LLC, ("School") is a private career school as defined by Minnesota statute, and thus is subject to the requirements of the Private Career School Act ("Act"). Compl. ¶¶ 47, 48, 52, 29, and 117.  In particular, Plaintiffs report that one of their four classes on horse massaging is "vocational" (Compl. ¶ 48), and it is currently advertised as such on Plaintiffs' website:

Armstrong Equine Massage offers the following classes:

- **Introduction to Massage –** Designed for clubs or groups that want to learn quick and simple tips for their horse's comfort.
- **AEM-1 Foundation Class –** Perfect for those that want to learn how to help their own horses or the first step to becoming a professional in the Equine Industry.
- **AEM-2 Master Class –** Designed to help Professionals that want to add value to their Equine Massage Business. You must complete the Foundation class first before The Master Class.
- **One-on-one Class –** This class is designed for customized, one-on-one learning.

https://armstrongequinemassage.com/horse-massage-classes/ (last accessed January 12, 2024) (highlighting added).[2]  Confirming that Plaintiffs' career/business course (AEM-2 Master Class) is career/vocational class, Plaintiffs' list of subjects covered in the class include "marketing/business" and "documentation–client records" as disclosed on the following excerpt of Plaintiffs' webpage solicitation:

---

[2]  Plaintiffs' webpage advertisements for classes are a matter of public record and referenced throughout the Complaint; accordingly, they are properly considered by the Court. See, e.g., *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

**AEM-2 Master Class**

Designed to help Professionals that want to add value to their Equine Massage Business. You must complete the Foundation class first before The Master Class.

**What we cover in AEM-2 Master Class:**

- Biomechanics
- Fascia
- Equine Acupressure
- Equine Anatomy ~ Skeletal
- Advanced Massage and Stretches
- Marketing/Business
- K- Tape application
- Skill Assessment
- Customizing each massage to promote balance
- Documentation~ Client records

There is a case study requirement after Class that must be completed before taking the final test.

Certification is not guaranteed for any class. You must complete the requirements of case studies and testing to pass.

**Included with certification:**

- **Mentoring and support**
- **Become a member of Armstrong private Facebook group**
- **Network with other animal massage professionals**
- **Business listing on website once complete**

*Id.* (highlighting added). In addition, Plaintiffs' advertising reports that, upon completing the AEM-2 Master Class's requirements for "case studies and testing," the School will provide formal recognition in the forms of a "Certification" together with getting listed on the Plaintiffs' "Business listing" for Equine Massage Therapists. *Id.* Finally, Plaintiffs' advertising states tuition for the four-day business training class ("AEM-2 Master Class") is $1,695.00, that the next class is scheduled for March 18–21, 2024, and that tuition is "Paid in Full at Registration. Non-refundable." *Id.*

## PROCEDURAL HISTORY

On March 1, 2023, OHE officials sent a letter with a cover email to Plaintiffs, advising it had come to OHE's attention that Plaintiffs may be offering or hosting

4

postsecondary education in the State of Minnesota and thus, may be required to be licensed under the Act. Compl. ¶ 40;  Declaration of Kate McCartan, OHE Institutional Monitoring Specialist, Institutional Licensing and Registration, Exhibit A (hereinafter, "McCartan Decl., Ex.__")[3].  The cover email from OHE stated: "We look forward to working with you to confirm compliance with Minnesota Private Career School Licensure requirements." *Id.*

The next day, on March 2, 2023, Plaintiff Leda Mox left a voice mail message (McCartan Decl., Ex. B) and sent an email stating:

> Thank you for emailing me.
>
> I do have a lot of questions. If you could call me when you get a chance that would be greatly appreciated.
>
> I have looked over the packet and need some clarity. I am happy to fill out or provide any information that you need for me to be in compliance.
>
> I will be looking forward to hearing from you.

(McCartan Decl., Ex. C.)  The next day, March 3, 2023, Ms. McCartan talked with Plaintiff Mox on the telephone, and followed up with a confirmation email as follows:

> Good morning Leda, Thank you for taking the time to speak with me today about OHE's licensing requirements.
>
> As we discussed, I want to connect you with Mr. Brian Geraghty (copied here), OHE's licensing specialist.  Brian manages the licensure applications

---

[3] "In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.,* 652 F.3d 971, 976 (8th Cir. 2011) (quotation omitted). The Declaration attaching the actual communications between Plaintiffs and OHE officials is "materials embraced by the pleadings," and thus, properly considered on a motion to dismiss.

and works with new providers to help them through the application process, so he would be the best resource to answer your questions.

I've attached our licensure application to this email so that you can review the requirements. I believe that you DO NOT need to complete the following pages for your first license submission:

- Placement Data – pgs. 12-14
- Net Student Revenue Statement pg. 27
- Enrollment pg. 29.

In regards to Student Record Protection (pgs. 24-26) you have 3 options:

1. $2,000 escrow deposit with our office.

2. $2,000 Student Records Bond (pgs. 25-26).

3. Student Record Protection Plan signed by another licensed institution in Minnesota which you can find at:  http://www.ohe.state.mn.us/sPages/141All.cfm

McCartan Decl., Ex. D.

After not hearing from Plaintiffs for about a month, on April 4, 2023, Ms. McCartan reached out to Plaintiffs to confirm that Ms. Mox had been able to connect with Mr. Geraghty on the licensure process, and to let OHE if it can assist. McCartan Decl., Ex. E. Plaintiff Mox responded as follows:

Yes! Thank you for checking!

I am still getting all my stuff together. Just did taxes so I can get current finances together.

*Id.* Due to Plaintiff Mox's expressed willingness to work with OHE regarding the licensure requirements, OHE waited to hear from Plaintiffs whether the School will: (a) complete and submit the forms to be licensed; (b) request an exemption from being licensed, or (c) refuse to be licensed. (McCartan Decl. ¶ 8.) OHE heard nothing further from Plaintiffs

until November, 2023, when Plaintiffs filed and served its Complaint against Defendant. (McCartan Decl. ¶ 9; ECF Doc. No. 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) "serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Onyiah v. St. Cloud State Univ.,* 655 F. Supp. 2d 948, 959–60 (D. Minn. 2009) (citation omitted). On a motion to dismiss, the Court considers all well-pleaded facts alleged in the Complaint as true and construes the pleading in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). However, the Court is not bound to accept as true legal conclusions or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (citation and quotation marks omitted). The Complaint "must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to

7

save a complaint." *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (internal citations and quotations omitted).

## ARGUMENT

Plaintiffs admit that they advertise and operate a "private career school" in Minnesota and that they are subject to the licensure requirements of the Private Career School Act ("Act") (Compl. ¶¶ 47, 48, 52, 29, and 117). Accordingly, there are no material facts in dispute. Plaintiffs instead claim the Minnesota statutes requiring them to be licensed violate their First Amendment right to free speech. (Compl., Claim I, ¶ 112, *et seq.*). This Court should dismiss Plaintiffs' Complaint because requiring state licensure to provide consumer protections for students enrolling in vocational classes does not infringe on Plaintiffs' First Amendment rights.

## I.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The Court should dismiss Plaintiffs' Complaint because Plaintiffs failed to state claims for which the Court may grant relief. A motion to dismiss must be granted when the complaint fails to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678. A complaint fails this standard if it fails to plead "factual content" allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Pleading facts that are "merely consistent" with liability is insufficient, and "threadbare" recitals of elements supported by "mere conclusory statements" are

insufficient. *Id.* Although the Court must assume the factual allegations of a complaint are true, it need not defer to any legal conclusions. *Twombly*, 550 U.S. at 555.

Here, Plaintiffs raise both as-applied and facial challenges to provisions of the Private Career School Act ("the Act"). Plaintiffs' as-applied challenge fails because the challenged statutes have not infringed on Plaintiffs' right to free speech. Plaintiffs' facial challenge fails because there are ample circumstances in which operation of the challenged statutes would be constitutional.

### A.   PLAINTIFFS' AS-APPLIED CHALLENGE FAILS AS A MATTER OF LAW.

Plaintiffs raise an as-applied First Amendment challenge to provisions of the Act that 1) do not prohibit Plaintiffs from engaging in any speech whatsoever, 2) are aimed at preventing fraud on consumers, and 3) do not include any direct regulation of speech. Plaintiffs' apparent argument is that the challenged statutes are content-based restrictions on speech simply because they grant OHE jurisdiction over private career schools but omit other entities of a different nature. Complaint ¶¶ 69-71, 119. As discussed below, this argument fails because the challenged provisions regulate only non-expressive conduct and because the Act is a valid occupational licensing statute that does not have a more-than-incidental effect on speech. Moreover, even if the challenged provisions did affect speech in a manner sufficient to trigger First Amendment scrutiny, the statutes would only be subject to a deferential "reasonable basis" standard of review, which they would easily satisfy.

1.   **The Burdens Plaintiff Allegedly Faces Solely Concern Non-Expressive Conduct and Cannot Support a First Amendment Claim.**

Plaintiffs allege that the Act violates the First Amendment by requiring licensure of entities charging tuition for courses aimed at professional advancement. Compl. ¶ 111, et seq. The First Amendment protects speech.  It does not protect non-expressive conduct. *Redlich v. City of St. Louis*, 51 F.4th 283, 287 (8th Cir. 2022).  In order for conduct to be protected, it must be *inherently* expressive.  *Id.* (citing *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 65–66 (2006)).  The Act does not contain, and Plaintiffs do not allege it contains, any provisions restricting private career schools from teaching any subject, using any curriculum, or taking any viewpoint.

Rather, the Act requires licensure based on the non-expressive conduct of whether tuition is charged to members of the public, and whether the program's purpose is to prepare students for enhancement of vocation skills with formal recognition upon passage. Minn. Stat. §§ 136A.833, subd. 2(9)–(16), (18)[4]; 136A.82, subds. 5, 9. Commercial activities, including quid-pro-quo transactions, however, are not inherently protected under the First Amendment. The collection of money for goods and services by itself is not inherently expressive. *Sorrell v. IMS Health Inc.,* 564 U.S. 552, 567, (2011) (the First

---

[4] Plaintiffs make some reference to "exempted vocational . . . schools." (Compl. ¶ 87). Defendant assumes this refers to programs in nursing and to programs that provide internal workplace trainings.  (Compl. ¶¶ 69, 70 (citing Minn. Stat. § 136A.833, subd. 2(4) & (9).) Nursing programs are regulated by the Minnesota Board of Nursing.  Minn. Stat. § 148.191, subd. 2(a); Minn. R. ch. 6301.  Defendant does not understand Plaintiffs to assert a First Amendment right to select their regulating agency.  As to the exemption for internal workplace trainings, the distinction between those businesses and Plaintiffs' business is that Plaintiffs collect tuition from the public, which is non-expressive conduct.

Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech.) Likewise, maintaining a career advancement purpose is not an inherently expressive activity. Accordingly, they are not protected by the First Amendment, and Plaintiffs' as-applied challenge fails as a matter of law. *See N.Y. State Ass'n of Career Schs. v. State Educ. Dep't of State of N.Y.*, 749 F. Supp. 1264, 1272 n.1 (S.D.N.Y. 1990) (holding that licensure requirements for career schools do not "remotely implicate First Amendment values").

### 2.   Plaintiffs' Allegation That They Are Treated Differently Than Other Businesses Is Insufficient To State a First Amendment Claim.

Plaintiffs base their theory of relief on the notion that they are treated differently from other businesses.   Compl. ¶¶ 69, 119. They do not allege that the challenged provisions of the Act treat them differently than licensed entities with a different message. Instead, their entire assertion of differential treatment is premised on whether businesses *other than private career schools* are subject to licensure.   This is not a First Amendment issue.  Occupational licensing statutes are a widely accepted part of American government. *See* Nick Robinson, *The Multiple Justifications of Occupational Licensing*, 93 Wash. L. Rev. 1903, 1912 (2017) (noting that 22% of the U.S. workforce, including more than 50% of the "[e]ducation, training, and library occupations," are subject to licensing).   Such statutes must satisfy constitutional requirements, including affording due process and treating similarly situated entities equally, but they are not subject to First Amendment scrutiny unless they directly burden speech. *N.Y. State Ass'n of Career Schs.*, 749 F. Supp.

11

at 1272–73 (finding that a similar claim was properly evaluated as "an equal protection, not a First Amendment argument").

Plaintiffs allege that the Act violates the First Amendment by including Plaintiffs' business while excluding businesses of other types.[5] (*See* Compl. ¶¶ 69, 71.) Plaintiffs are incorrect.[6] "A statute that governs the practice of an occupation is not unconstitutional as an abridgment of the right to free speech, so long as any inhibition of that right is merely the incidental effect of observing an otherwise legitimate regulation." *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011) (quoting *Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988); citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456–57 (1978)). Where a licensing requirement "governs occupational conduct, and not a

---

[5] As an initial matter, Plaintiffs' theory, that in order to regulate any instruction, OHE must regulate all forms of instruction, is inconsistent with American administrative law. All agencies have limits to their jurisdiction, and those limits are inherently incidentally related to potentially-regulated entities' speech. *E.g.*, 15 U.S.C. §§ 80b-2(a)(11) (exempting from registration as investment advisers, banks, lawyers, and publishers of financial periodicals, among others), 80b-3(b) (excepting from registration investment advisers who serve private funds or insurance companies).

The Minnesota Legislature has charged OHE with regulation of higher education. The Legislature has determined, reasonably, that higher education includes private career schools, such as businesses offering courses on homeopathy, digital marketing, and how to open a horse massage business. The Legislature has determined, equally reasonably, that higher education does not include avocational instruction like golf, piano lessons, or horseback riding, so it put those outside of OHE's reach. This is not a First Amendment issue.

[6] Indeed, limits on agency jurisdiction may be *required* by the First Amendment. One of the concerns courts express about licensing is the potential that an agency will burden substantially more speech than necessary to achieve its goal. *Safelite Grp., Inc. v. Rothman*, 229 F. Supp. 3d 859, 883 (D. Minn. 2017).

substantial amount of protected speech, it does not implicate constitutionally protected activity under the First Amendment." *Id.* (internal quotation omitted); *see also Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225–26 (11th Cir. 2022) (reaffirming the rule in *Locke*).[7]

In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, the Supreme Court upheld an ordinance that required a license to sell items "marketed for use with illegal cannabis or drugs" and considered proximity to drug-related literature to indicate that the marketing element was met. 455 U.S. 489, 492, 495–96 (1982). The Court held that the ordinance did not restrict noncommercial speech because it did not prevent sale or display of any type of literature, and only incidentally impacted commercial speech by restricting how a store operator sets up his marketing displays. *Id.* at 496. Accordingly, there was no First Amendment issue.

*Village of Hoffman Estates* controls in this matter. The Act is an occupational licensing statute. Those who wish to offer post-secondary vocational classes for money in Minnesota must comply with the Act, just as the plaintiffs wishing to be interior designers in *Locke* and nutrition counselors in *Del Castillo* had to comply with the relevant licensing statutes in those cases. The Act exclusively governs occupational conduct, such as student

---

[7] This is not to say that occupational licensing statutes are outside of the Constitution's reach. If a statute was arbitrary or enacted for an improper purpose, the equal protection and due process clauses might provide a basis for a challenge. *See, e.g., Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) (invalidating, on rational basis review, a statute requiring a mortuary license in order to sell caskets as a violation of equal protection and due process clauses). But the occupational licensing statute at issue and conduct alleged in this case is outside the scope of any First Amendment challenge.

recordkeeping, advertising, and student discipline. These provisions apply to all private career schools, regardless of subject or viewpoint. The Act's impact on protected speech is minimal at most. It does not prescribe or prohibit any curriculum, pedagogical approach, or viewpoint. The effects on speech are less direct than those in *Flipside*, which the Supreme Court held to be incidental. *See* 455 U.S. at 496. Because the Act is an occupational licensing statute that does not have more than incidental effects on speech, it complies with the First Amendment. *Del Castillo*, 26 F.4th at 1225–26. Accordingly, Plaintiffs' claim fails, and the Court should grant Defendant's motion to dismiss.

3. **To the Extent First Amendment Scrutiny Applies to Any of the Statutes Challenged, a Deferential Standard Applies, and the Statutes Easily Withstand That Level of Scrutiny.**

Plaintiffs' challenges to the Act's various licensure requirements (Compl. ¶¶ 53-66) do not implicate First Amendment scrutiny. The challenged statutes include disclosure requirements. *See* Minn. Stat. § 136A.822, subd. 4. The required disclosures are made *to OHE*. (Compl. ¶¶ 53, 54.) This does not trigger First Amendment scrutiny because no information is put into the "marketplace of ideas," where the First Amendment seeks to maintain governmental neutrality. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. ----, 138 S. Ct. 2361, 2374–75 (2018) (striking down a statute requiring delivery of a particular message to patients, in part because it distorted the marketplace of ideas). Requiring a private career school to send its syllabi to OHE implicates speech no more than the IRS requiring taxpayers to submit tax returns or supporting documentation. It is a minimal requirement to ensure consumer protection and falls outside the scope of the First Amendment. *See Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188–89 (2007)

(upholding a content-based restriction on alleged political speech where it posed no threat to the marketplace of ideas).

If the Court were to find that such disclosures trigger First Amendment scrutiny, those disclosures would be subject to the deferential standard from *Zauderer v. Office of Disciplinary Counsel of Supreme Ct. of Ohio*. *See* 471 U.S. 626, 651 (1985). Under *Zauderer*, where a disclosure requirement is designed to prevent deceptive speech or require only disclosure of facts, it need only be "reasonably related" to an "identified governmental interest." *See Milavets, Gallop & Milavets, P.A. v. United States*, 559 U.S. 229, 250 (2010). When the possibility of deception is self-evident, the government need not produce evidence to support a challenged statute. *Id.* at 251. The "reasonable relation" prong of the test is deferential because regulated entities have only a minimal interest in avoiding disclosure of factual information. *Recht v. Morrisey*, 32 F.4th 398, 418 (4th Cir. 2022).

The Act easily satisfies the *Zauderer* standard. First, the Act furthers identified interests. The Act is meant to provide assistance and protection to students considering enrolling in private postsecondary institutions and programs by establishing policies and procedures to assure the authenticity and legitimacy of the programs. *See* Minn. Stat. § 136A.61. The potential for defrauding students is self-evident.[8] The challenged provisions

---

[8] The potential for schools to defraud potential students is also well documented. *See, e.g.*, *Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students*, U.S. Dep't of Educ. (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students; *FTC Targets False* (Footnote Continued on Next Page)

of the Act require disclosures of verifiable facts and already-existing documents to OHE so that it can determine whether a private career school seeking a license or license renewal is in alignment with the Act's goals. The disclosures also allow OHE to monitor private career schools' marketing materials for false and misleading representations. In sum, the challenged provisions have the purpose of preventing and reacting to deceptive speech.

The challenged provisions require only disclosure of facts. They do not restrict speech in any way. They do not require adoption or ratification of any message or opinion. Moreover, the material that must be disclosed is limited to easily verifiable facts. Many of the provisions only require the disclosure of materials that the school has already created, such as syllabi, policies, and marketing materials. The remaining disclosures are of readily verifiable information, such as what jobs former students obtained and the school's annual gross revenue. These types of information are exactly what the *Zauderer* standard was designed for.

Second, the challenged provisions of the Act exceed the "reasonable relation" standard. The State's interest in protecting consumers from false representations is clearly advanced by requiring regulated entities to convey the relevant facts to OHE. Plaintiffs' belief that the challenged provisions are unwise is not sufficient to show a lack of reasonable relation. *Recht*, 32 F.4th at 419.

---

*Claims by For-Profit Colleges*, Fed. Trade Comm'n (Oct. 6, 2021), https://www.ftc.gov/news-events/news/press-releases/2021/10/ftc-targets-false-claims-profit-colleges; *FTC Approves Changes to Vocational Schools Guides*, Fed. Trade Comm'n (Nov. 7, 2013), https://www.ftc.gov/news-events/news/press-releases/2013/11/ftc-approves-changes-vocational-schools-guides.

In short, the challenged provisions of the Act do not implicate any First Amendment interest, but even if they were evaluated under the First Amendment, the challenged provisions satisfy the *Zauderer* standard. Plaintiffs' claim therefore fails and the Court should grant Defendant's motion to dismiss.

### B.   PLAINTIFFS CANNOT MAINTAIN A FACIAL CHALLENGE.

Plaintiffs also assert a facial challenge to provisions of the Act. This challenge fails as a matter of law because Plaintiffs have not pled facts to show that a facial, as opposed to as-applied, challenge is appropriate and, in any case, cannot carry the heavy burden that applies to facial challenges.

### 1.   Plaintiffs Are Limited to an As-Applied Challenge.

Plaintiffs have not pled the necessary facts to show that a facial challenge is appropriate. Generally, "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Los Angeles Police Dep't v. United Reporting Publishing Corp.*, 528 U.S. 32, 38 (1999). Exceptions to the general rule are not readily found and are typically limited to cases of overbreadth such that protected speech of non-parties to the case will be chilled. *See id.* at 38–39.

In this case, Plaintiffs do not assert a facial overbreadth challenge. (*See* Compl. ¶¶ 111–15); *see also Final Exit Network, Inc. v. Ellison*, 370 F. Supp. 3d 995, 1008–15 (D. Minn. 2019) (analyzing the difference between a facial challenge and a facial overbreadth challenge). Rather, the Complaint solely alleges that the Act facially restricts speech on the basis of content. (Compl. ¶¶ 111–15.)

17

This is not a case in which there is a risk of speech being chilled.  The Act prohibits no speech.  It merely requires licensure.  If an entity is denied or revoked its private career school license, it can challenge that determination requesting an administrative contested case hearing under the Minnesota Administrative Procedures Act, Minn. Ch. 14. Minn. Stat. § 136A.829, subd. 2.  If an entity believes it falls outside of the jurisdiction of the Act, it can apply for an exemption (Minn. Stat. § 136A.833, subd. 1), again with the right to challenge that determination in a Chapter 14 administrative hearing. *Id.*  Both types of final administrative agency decisions may be appealed to the Minnesota Court of Appeals. Minn. Stat. §§ 14.64-69; *Padilla v. Minn. Bd. Of Med. Exam'rs,* 382 N.W.2d 876, 882 (Minn. 1986) (noting Minnesota court of appeals can consider constitutional issues on appeal from administrative proceedings). Any entity that has an objection to the Act or OHE's application of the Act has the opportunity to represent its own interests in such proceedings or appeals.  Accordingly, this is not the type of statute for which a facial challenge is appropriate, and the Court should grant Defendant's motion to dismiss.  *See United Reporting*, 528 U.S. at 38.[9]

### 2.   The Act Survives a Facial Challenge.

Even if Plaintiffs were eligible to raise a facial challenge to the Act, that claim would fail as a matter of law.  "A facial challenge to a legislative Act is, of course, the most

---

[9] Plaintiffs make passing reference to a "prior restraint" on speech.  (Compl. ¶ 78.) Defendant does not understand Plaintiffs to be raising a prior restraint challenge.  (*See* Compl. ¶¶ 111–15 (asserting Plaintiffs' sole claim).)  In any case, a prior restraint claim would necessarily fail because the challenged provisions of the Act fall outside First Amendment scrutiny.  *See* Section IA, *supra*.

difficult challenge to mount successfully." *Larson v. City of Minneapolis*, 568 F. Supp. 3d 997, 1007 (D. Minn. 2021).  Facial challenges are disfavored and require the plaintiff to demonstrate that no set of circumstances could render the statute constitutional.  *Phelps-Roeper v. City of Manchester, Mo.*, 697 F.3d 678, 685 (8th Cir. 2012).

Plaintiffs rest their facial challenge on the legal conclusion that the challenged provisions of the Act constitute a "content-based restriction on speech and violate[] the First Amendment."  (Compl. ¶ 112.)  As explained in Defendant's response to Plaintiffs' as-applied challenge the Act is not a restriction on speech at all.  *See* Sec. I, *supra*.  For this reason alone, Plaintiffs' facial challenge fails.

Moreover, even if there were some questions about the constitutionality of the Act as applied to Plaintiffs, the Act plainly comports with the First Amendment in some circumstances.  Licensure requirements for private career schools aimed at preventing affirmative misrepresentations to consumers and ensuring that there is a job market for vocational programs are permitted under the First Amendment.  *See Mass. Ass'n of Private Career Schools v. Healey*, 159 F. Supp. 3d 173 (D. Mass 2016) (holding more burdensome, but otherwise similar, set of consumer protection provisions constitutional).  Would Plaintiffs see a First Amendment violation when the Act applied to a school that advertised a 90% job placement rate when the real number was 58%?  *See Education Department Approves $415 Million in Borrower Defense Claims Including for Former DeVry University Students*, U.S. Dep't of Educ. (Feb. 16, 2022), https://www.ed.gov/news/press-releases/education-department-approves-415-million-borrower-defense-claims-including-former-devry-university-students.  Would Plaintiffs find the Act unconstitutional when

applied to a school that promised life-long career placement services but delivered only links to Craigslist postings, provided prospective students with a false list of employers that had hired the school's graduates, and failed to provide books and software for which its students paid? *See Commonwealth of Massachusetts v. The Career Institute*, 2013-CV-4128H, Consent Judgment at 9–10 (Mass. Super. Ct. Jun. 1, 2016), https://www.mass.gov/doc/aci-consent-judgment/download.   In any case, the challenged provisions would plainly be constitutional in some circumstances.  *See Mass. Ass'n of Private Career Schools*, 159 F. Supp. 3d at 219–20.  Plaintiffs have not pled facts that plausibly demonstrate that every possible application of the Act would violate the First Amendment.  Accordingly, Plaintiffs have not met their pleading obligation with respect to the high bar for facial challenges, and their facial challenge cannot survive Defendant's motion to dismiss.

## CONCLUSION

Plaintiffs ask the Court to find a free speech violation in a licensing statute that applies equally to all private career schools and does not prohibit any speech.  The Court should dismiss Plaintiffs' Complaint for failure to state a claim for the three independently sufficient reasons that the challenged statutory provisions do not regulate speech, that they are part of a valid occupational licensing framework, and that they satisfy the *Zauderer* reasonable basis standard.  Plaintiffs' facial challenge fails for the additional reasons that the circumstances pled do not permit a facial challenge and that the challenged provisions

have constitutionally valid applications beyond the application to Plaintiffs.  Accordingly,

Defendant asks the Court to dismiss Plaintiffs' Complaint in its entirety with prejudice.


Date: January 12, 2024                    Respectfully submitted,

                                          KEITH ELLISON
                                          Attorney General
                                          State of Minnesota



                                          */s/ Martha J. Casserly*
                                          MARTHA J. CASSERLY
                                          Assistant Attorney General
                                          Atty. Reg. No. 0148271
                                          ALEC SLOAN
                                          Assistant Attorney General
                                          Atty. Reg. No. 0399410

                                          445 Minnesota Street, Suite 1400
                                          St. Paul, Minnesota 55101-2131
                                          (651) 757-1214 (Voice)
                                          (651) 297-1235 (Fax)
                                          marty.casserly@ag.state.mn.us

                                          ATTORNEYS FOR DEFENDANT