UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Leda Mox and Armstrong Equine
Massage Therapy, LLC,

      Plaintiffs,

v.

Dennis Olson, Jr., *in his official capacity
as Commissioner of the Minnesota Office
of Higher Education*,

      Defendant.

File No. 23-cv-3543 (ECT/ECW)

**OPINION AND ORDER**

---

Jeffrey H. Redfern and Bobbi M. Taylor, Institute for Justice, Arlington, VA; and Anthony B. Sanders, Institute for Justice, Lake Elmo, MN, for Plaintiffs Leda Mox and Armstrong Equine Massage Therapy, LLC.

Alexander Robertson Sloan and Martha J. Casserly, Minnesota Attorney General's Office, St. Paul, MN, for Defendant Dennis Olson, Jr.

---

Minnesota's Private Career School Act requires private vocational schools to be licensed. To obtain licensure, these schools must pay fees, maintain student records, submit to inspections, provide financial information to the Minnesota Office of Higher Education, and more. Plaintiffs Leda Mox and her equine massage school, Armstrong Equine Massage Therapy, LLC, claim the Act's requirements impose content-based restrictions on their First Amendment freedom-of-speech rights.

Dennis Olson, Jr., in his capacity as commissioner of Minnesota's Office of Higher Education, moves to dismiss under Rule 12(b)(6). The motion will be denied. Plaintiffs have carried their burden of plausibly alleging they are subject to regulation under the

challenged statute and that it imposes a content-based restriction on their speech. Whether the Act survives heightened scrutiny is best decided at a later stage.

I[1]

Armstrong is an equine and canine massage school; it provides "massage services, clinics, training, and certification to those who wish to learn the technique of equine massage." Compl. [ECF No. 1] ¶ 5. Mox is Armstrong's founder and sole instructor. *Id.* ¶ 4. Mox became a certified equine sports massage therapist in 1997 and earned a Bachelor of Science degree in equine science in 2007. *Id.* ¶¶ 21–22. She founded Armstrong in 2013 and has continuously operated the school from her farm in Becker, Minnesota, since then. *Id.* ¶ 23. Defendant Dennis Olson, Jr. ("the Commissioner") is the commissioner of the Minnesota Office of Higher Education. *Id.* ¶ 7. He is sued in his official capacity. *Id.*

Armstrong offers four courses in equine massage. *Id.* ¶ 27. Two are one-day introductory massage classes, offered for recreation or hobby. *Id.* ¶ 28. The other two are certification classes. *Id.* ¶ 29. The certification classes are each four days long and require students to pass a written test, work on ten horses, perform two massages, and complete case studies. *Id.* ¶¶ 29–30. They also provide instruction on "how to market an equine massage business and how to keep accurate client records." *Id.* ¶ 29. Mox also offers one-on-one teaching, including certification, upon request. *Id.* ¶ 31. Since opening her

---

[1] In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn from the Complaint and, as explained in greater detail below, materials embraced by it. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

school more than ten years ago, Mox has taught over 400 students. *Id.* ¶ 40. About twenty-five percent of Armstrong's graduates work as equine massage therapists. *Id.* ¶ 24.

Mox maintains a website, www.armstrongequinemassage.com, at which she provides information about Armstrong, including "location, contact information, background and experience, course offerings, including dates, costs, and requirements for certification." *Id.* ¶ 39. Before she began teaching equine massage courses, Mox confirmed with the Minnesota Department of Education that she did not need its permission or approval to teach them. *Id.* ¶ 26.

Mox alleges she received a letter from "Minnesota authorities" in March 2023, informing her that "she could no longer teach horse massage without a license." *Id.* ¶ 40. Mox alleges the Office of Higher Education—rather than the Department of Education, with whom she checked years earlier—informed her that Armstrong is subject to the Minnesota Private and Out-of-State Public Postsecondary Education Act of 2007, Minn. Stat. § 136A.61. *See id.* ¶ 45.

In fact, the Office of Higher Education informed Mox that her school may be subject to the Private Career School Act ("the Act"), Minn. Stat. §§ 136A.82–.834 (2022).[2] *See* Def.'s Ex. A [ECF No. 20-1].[3] The Act defines a private career school as "a person who

---

[2] The Court is aware that sections of the Act were amended on July 1, 2024. *See* 2024 Minn. Sess. Law Serv. Ch. 124 (H.F. 4024). The effects of those amendments on this case, if any, have not been addressed by the parties. Having reviewed the amendments, I don't see a need to analyze the problem under the Act's amended version. The 2022 version, under which Plaintiffs brought suit, will be used throughout.

[3] In their submissions, the parties cite somewhat indiscriminately to both statutes—the Private *Career School* Act and the Private *and Out-of-State Public Postsecondary*

3

maintains, advertises, administers, solicits for, or conducts any program at less than an associate degree level; is not registered as a private institution under sections 136A.61 to 136A.71; and is not specifically exempted by section 136A.833." Minn. Stat. § 136A.821, subdiv. 5. Non-exempt schools covered by the Act must be licensed by the Office of Higher Education. § 136A.822, subdiv. 1. To obtain licensure, schools must submit an application containing certain required information, including the school's title; the names of controlling officers, members, managing employees, and director; the programs offered; financial documents including gross revenue, a balance sheet, income statement, and documentation prepared by an independent public accountant or CPA; and copies of all media advertising and promotional literature. Compl. ¶ 54 (referencing § 136A.822, subdiv. 4). Schools must also file a corporate surety bond of at least $10,000, *id.* ¶ 55 (citing § 136A.822, subdiv. 6(a), (b)(1)), pay licensing fees, submit to inspection, and keep permanent student records for at least fifty years, *id.* ¶¶ 57–58, 65–66, 80–81 (citing § 136A.822, subdivs. 9, 12; § 136A.824). Plaintiffs allege schools not in compliance with the Act may be fined or enjoined from operating. *Id.* ¶¶ 67–68.

Plaintiffs allege they are subject to regulation under the Act because they conduct programs for which they grant formal recognition at less than an associate degree level (that is, certification) and are not subject to exemptions. Compl. ¶¶ 47–52; Minn. Stat.

---

*Education* Act. *See generally* Compl.; Pls.' Mem. in Opp'n [ECF No. 23]; Def.'s Mem. in Supp. [ECF No. 19] at 15. The Private and Out-of-State Public Postsecondary Education Act seems inapplicable to Mox and Armstrong; it applies only to institutions that grant degrees such as "associate, bachelor, baccalaureate, masters, or doctorate" degrees. Minn. Stat. § 136A.62, subdiv. 4.

4

§ 136A.821, subdivs. 5, 9. After researching licensure compliance, Mox found the Act's requirements to be onerous, expensive, burdensome on her speech, and sometimes inapplicable. Compl. ¶¶ 42–44, 54, 61. Mox alleges "the costs of compliance would need to be offset by a rise in program costs," which would make it difficult for her to remain competitive and may risk her business altogether. *Id.* ¶¶ 82–83. She asserts that she "has essentially been stopped from speaking" until she complies with the Act. *Id.* ¶ 77.

Plaintiffs sued the Commissioner in a single-count complaint. *See* Compl. They seek to enjoin the Act's enforcement on the ground that it violates the First and Fourteenth Amendment's freedom-of-speech guarantees. *Id.* ¶ 123; *id.* at 25 ¶ D. Plaintiffs also seek a declaration that the Act is unconstitutional on its face and as applied to them, and that Armstrong may continue teaching. *Id.* at 24–25 ¶¶ A–C. The Commissioner moves to dismiss the Complaint for failure to state a claim. ECF No. 17.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792 (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Ordinarily, courts do not consider matters outside the pleadings in resolving a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d). If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" may be considered without converting the motion into one for summary judgment. *Zean*, 858 F.3d at 526 (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

The Commissioner supported his motion with a declaration and five exhibits. ECF No. 20. Exhibit A, the letter from the Office of Higher Education [ECF No. 20-1], is incorporated by the Complaint, *see* ¶ 40, and is thus properly considered at the motion-to-dismiss stage. Exhibits B through D, a voicemail and emails between the parties [ECF Nos. 20-2–20-4], do not fall under any *Zean* category and will not be considered in resolving this motion.

### III

### A

The parties agree that Plaintiffs are subject to regulation under the Act. *See* Compl. ¶ 6; Def.'s Mem. in Supp. [ECF No. 19] at 3. A close examination of the Act confirms this is so. The Act requires private career schools to obtain licensure from the Office of Higher

6

Education before operating their programs, Minn. Stat. § 136A.822, subdiv. 1, and defines a private career school as "a person who maintains, advertises, administers, solicits for, or conducts any program at less than an associate degree level; is not registered as a private institution under sections 136A.61 to 136A.71; and is not specifically exempted by section 136A.833." Minn. Stat. § 136A.821, subdiv. 5.

Under the Act, a person is "any individual, partnership, company, firm, society, trust, association, or corporation or any combination thereof." Minn. Stat. § 136A.821, subdiv. 4. Plaintiffs Mox and Armstrong—an individual and a corporation—meet the definition of "persons." *See* Compl. ¶¶ 4–5. A "program" is "any course or grouping of courses[4] that is advertised or listed in a private career school's catalog, brochures, electronic display,[5] or other publications, or for which the private career school grants a formal recognition." Minn. Stat. § 136A.821, subdiv. 9. Plaintiffs conduct four courses, which are listed on Armstrong's website, Compl. ¶ 39, two of which grant "formal recognition" in the form of certification, *id.* ¶¶ 29–30. Plaintiffs have plausibly alleged that Armstrong "maintains, advertises, administers, solicits for, or conducts" a program.

---

[4] "'Course' means any classroom or distance instruction; any subunit of a program; or any combination thereof." Minn. Stat. § 136A.821, subdiv. 6. Plaintiffs allege Armstrong provides instruction, *see* Compl. ¶¶ 27, 50, and describes Mox as an instructor, *see, e.g.*, *id.* ¶¶ 4, 54, 61. See also *id.* ¶¶ 27–31 for descriptions of Armstrong's courses.

[5] "'Electronic display' means text, images, or sound rendered via any electronic device designed to present information, whether generated by the device or transmitted from another source." Minn. Stat. § 136A.821, subdiv. 12. Plaintiffs' website appears to meet the definition. *See* Compl. ¶ 39 (describing the site as "provid[ing] students, prospective students, and the public with . . . information"); *see also* www.armstrongequinemassage.com.

7

The only formal recognition Plaintiffs allege they bestow on students is a certificate, so the program is plausibly alleged to be "at less than an associate degree level." Minn. Stat. § 136A.821, subdiv. 5.

Plaintiffs must therefore comply with the Act so long as they are "not registered as a private institution under sections 136A.61 to 136A.71; and [are] not specifically exempted by section 136A.833." *Id.* Section 136A.61 is the Minnesota Private and Out-of-State Public Postsecondary Education Act; it does not apply to Plaintiffs because it governs institutions that grant degrees such as "associate, bachelor, baccalaureate, masters, or doctorate" degrees. Minn. Stat. § 136A.62, subdiv. 4. Plaintiffs grant no such degrees.

Section 136A.833, in turn, enumerates eighteen exemptions to coverage under the Act. Those exemptions may be read to establish a "threshold" for coverage: courses consisting of fewer than sixteen hours of instruction, or those where tuition, fees, and other charges combined do not exceed $100 are exempted from the Act's requirements. *Id.*, subdivs. 15, 18. And schools that teach "purely avocational, recreational, or remedial subjects" are exempt. *Id.*, subdiv. 10. Other exemptions apply to certain courses' subjects. For example, courses in modeling, acting, and "personal development" are exempt. *Id.*, subdiv. 16. Likewise, exempt from the Act's coverage are "classes, courses, or programs intended to prepare students to sit for undergraduate, graduate, postgraduate, or occupational licensing, certification, or entrance examinations." *Id.*, subdiv. 14. Religious schools are nearly categorically exempt. Minn. Stat. § 136A.834, subdiv. 1.

To be covered, then, a private career school must maintain, advertise, administer, solicit for, or conduct a course that requires over sixteen hours of instruction, costs more

8

than $100, and teaches a vocational subject, unless some other exemption applies. Granting formal recognition is not a necessary component of being a private career school, *see* Minn. Stat. § 136A.821, subdiv. 9 (using the disjunctive "or" in defining a program as courses "advertised or listed in a private career school's catalog . . . *or* for which the private career school grants a formal recognition" (emphasis added)).

Plaintiffs allege they teach four-day vocational classes for which they grant formal recognition, and that they are not exempted from compliance. Compl. ¶¶ 29, 48, 117. Though Plaintiffs do not allege how much their classes cost, they point to their website as providing information on fees, which lists the cost of certification classes as $1,695.00. *See* Compl. ¶ 39; *Horse Massage Classes by Armstrong Equine*, Armstrong Equine & Canine Massage Therapy, https://armstrongequinemassage.com/horse-massage-classes/ (last visited July 23, 2024). Plaintiffs have alleged facts plausibly showing they are subject to the Act.

B

Having established the Act covers Plaintiffs, next consider whether the Act regulates speech—that is, whether the Act is subject to First-Amendment scrutiny. Plaintiffs argue that teaching is protected speech, and that by saddling schools with onerous and expensive licensing requirements, the Act impermissibly burdens speech. Pls.' Mem. in Opp'n at 17–25. The Commissioner argues the Act regulates only non-expressive conduct—whether tuition is charged—and therefore falls outside First Amendment scrutiny. Def.'s Mem. in Supp. at 10–11. On the Complaint's taken-as-true allegations, Plaintiffs have the better argument.

9

The First Amendment, applicable to the states through the Fourteenth Amendment, provides, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Along with protecting "the spoken or written word, . . . conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Redlich v. City of St. Louis*, 51 F.4th 283, 287 (8th Cir. 2022) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)); *see also Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) (noting a law implicates speech where "the conduct triggering coverage under the statute consists of communicating a message"). The First Amendment does not protect non-expressive conduct. *Redlich*, 51 F.4th at 287.

In *Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020), the Ninth Circuit squarely addressed whether vocational training is speech. The *Kirchmeyer* plaintiffs challenged a California law—the California Private Postsecondary Education Act ("PPEA"), Cal. Educ. Code § 94800 (2019)—that prohibited career schools from accepting students who lacked either a high school diploma or a passing score on a prescribed examination. *Kirchmeyer*, 961 F.3d at 1065–66. Specifically, the PPEA prohibited "execut[ing] an enrollment agreement" between the school and the would-be student. *Id.* at 1066. The plaintiffs (a horseshoeing school, its owner, and a would-be student), challenged the PPEA on First Amendment grounds. As in this case, the defendants argued the PPEA regulated non-expressive conduct—"namely, the execution of the enrollment agreement between a private postsecondary school and a prospective student." *Id.* at 1068. The district court agreed, determining the PPEA regulated only conduct, and any burden on speech was incidental. *Id.* at 1069. It dismissed the claim. *Id.*

10

But the Ninth Circuit, viewing the PPEA "in its entirety," found it regulated speech. *Id.* at 1069.

The Ninth Circuit found: "There can be little question that vocational training is speech protected by the First Amendment." *Id.* It explained,

> [Instructor's] "speech to [students] imparts a 'specific skill' or communicates advice derived from 'specialized knowledge.'" *Humanitarian Law Project*, 561 U.S. at 27. "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). And, important to this case, "[a]n individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated." *Id.* at 568 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984)).

*Id.* Moreover, the Supreme Court has explained that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell*, 564 U.S. at 570 (citing *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct.")). Two of the *Kirchmeyer* plaintiffs, the horseshoeing school and its owner, sought to teach specific skills and impart information to students. The PPEA "regulate[d] what kind of educational programs different institutions [could] offer to different students," and, as such, "squarely implicate[d] the First Amendment." *Kirchmeyer*, 961 F.3d at 1069.

The Ninth Circuit's reasoning is both persuasive and applicable here. Plaintiffs plausibly allege their vocational instruction imparts specific skills and knowledge such that it may be considered speech protected by the First Amendment. The Commissioner's

11

argument that only non-expressive conduct (*i.e.*, whether tuition is charged), Def.'s Mem. in Supp. at 10–11, is as unavailing as the state's arguments in *Kirchmeyer*. The enforcement-triggering conduct may be charging tuition, advertising courses, or granting formal recognition, *see* Minn. Stat. § 136A.821, subdivs. 5, 9, but the effect is to stop private career schools from teaching. *See Thomas v. Collins*, 323 U.S. 516, 536 (1945) (considering a restriction's practical effects when determining it implicated speech). Plaintiffs plausibly allege the Act, read in its entirety, regulates speech.

So, too, do Plaintiffs plausibly allege their speech is *burdened* by the Act. Compl. ¶¶ 53–63 (describing the Act's requirements, including paying licensing fees, maintaining student records for fifty years, and submitting to physical inspections, among others); ¶¶ 82–84 (describing the effect of the Act's requirements on Plaintiffs, including that Mox "risks losing her business"). But as the Ninth Circuit pointed out in *Kirchmeyer*, the question "is not whether the [Act] places a burden on private postsecondary institutions— it plainly does, as do California's tax, zoning, and workplace laws. The question is whether, in the course of that regulation, the Act implicates heightened First Amendment scrutiny." *Kirchmeyer*, 961 F.3d at 1070 (citation omitted).

C

The next inquiry, then, must be whether the Act is content-based or content-neutral. Plaintiffs argue the Act is content-based because "it applies only to vocational training." Pls.' Mem. in Opp'n at 28. "The trigger for enforcement under the Act," Plaintiffs argue, "consists of speaking about a certain topic or communicating a message." *Id.* at 29. The

12

Commissioner declines to address the content-based versus content-neutral question as "not relevant to this motion." Def.'s Reply Mem. [ECF No. 24] at 16 n.9.

A law is "content neutral so long as it is justified without reference to the content of the regulated speech." *Phelps-Roper v. Ricketts*, 867 F.3d 883, 892 (8th Cir. 2017) (emphasis omitted) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (stating a law "would be content based if it required enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred") (cleaned up). "This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citation omitted). A law is content neutral if it "serves purposes unrelated to the content of expression," even if "it has an incidental effect on some speakers or messages but not others." *McCullen*, 573 U.S. at 480 (quoting *Ward*, 491 U.S. at 791).

The *Kirchmeyer* court, relying substantially on *Sorrell*, addressed this question nearly head-on. In analyzing California's law prohibiting certain students from enrolling in career schools, the PPEA, the Ninth Circuit looked to whether it "differentiates between speech or speakers." *Kirchmeyer*, 961 F.3d at 1070 (citing *Humanitarian L. Project*, 561 U.S. at 27–28). The court found the PPEA's many exceptions particularly relevant to this analysis. *See id.* at 1070–73. The PPEA's exceptions "turn[ed] on one of two things: (1) the content of what is being taught, or (2) the identity of the speaker." *Id.* at 1070. For example, the PPEA created exemptions that turned on a course's content, such as whether

13

a course offered was "solely avocational or recreational," or on the speaker, such as an exemption for "educational programs sponsored by a bona fide trade, business, professional, or fraternal organization" for the organization's members. Cal. Educ. Code § 94874(a) and (b)(1) (2019). The PPEA, therefore, favored "particular kinds of speech" (*e.g.*, avocational) and "particular speakers" (*e.g.*, bona fide trade organizations). *Kirchmeyer*, at 1071–72. It also exempted test preparation courses for standard examinations, flight instruction courses, nonprofit religious organizations, and more. *Id.* at 1066, 1071. Taken together, the court found, the many exceptions "demonstrate that the [PPEA] does more than merely impose an incidental burden on speech: it 'target[s] speech based on its communicative content.'" *Id.* at 1070–71 (quoting *Reed*, 576 U.S. 163).

Here, as in *Kirchmeyer*, the Act is "riddled with exceptions to the . . . rule." *Id.* at 1070. The Act contains some exemptions that are nearly identical to those at issue in *Kirchmeyer*. The Act exempts, for example, "private career schools engaged exclusively in the teaching of purely avocational, recreational, or remedial subjects," Minn. Stat. § 136A.833, subdiv. 10, as well as "classes, courses, or programs conducted by a bona fide trade, professional, or fraternal organization, solely for that organization's membership," *id.* § 136A.833, subdiv. 11, and religious schools, *id.* § 136A.834. It further exempts "programs in the fine arts," certain test preparation courses, and classes in "personal development, modeling, [and] acting." *Id.* § 136A.833, subdivs. 12, 14, 16. The distinctions the Act draws are significant. "[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Reed*, 576 U.S. at 169 (finding a code that "singles out specific subject

14

matter for differential treatment, even if it does not target viewpoints within that subject matter" is "a paradigmatic example of content-based discrimination."). Avocational messages, information about fine arts and modeling, messages from religious schools and trade associations are all given favorable treatment under the Act. *See* Minn. Stat. § 136A.833. The Act therefore engages in content-based discrimination. Moreover, the Act's many exemptions means it "require[s] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred," and, as such, is content-based. *McCullen*, 573 U.S. at 480 (cleaned up).

D

When legislation "burdens a fundamental right, such as the right to free speech, we must examine the legislation with more exacting or 'heightened scrutiny.'" *Kirchmeyer*, 961 F.3d at 1068 (quoting *Turner Broad. Sys., v. FCC*, 512 U.S. 622, 640–41 (1994)). In general, content-based restrictions on speech are subject to strict scrutiny. *Reed*, 576 U.S. at 163–64. To survive strict scrutiny, the legislation must serve a compelling state interest and must be narrowly tailored to meet that interest. *Id.* By contrast, when conduct-regulating legislation incidentally burdens speech, it is reviewed under intermediate scrutiny. *Turner Broad. Sys., v. FCC*, 520 U.S. 180, 189 (1997). Content-based restrictions on commercial speech may also be subject to intermediate scrutiny. *Kirchmeyer*, 961 F.3d at 1068. A law will survive intermediate scrutiny if it "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Turner*, 520 U.S. at 189. Ordinarily, that burden cannot be carried until the summary-judgment stage.

*See, e.g.*, *Brokamp v. James*, 66 F.4th 374, 397 (2d Cir. 2023) ("Because the intermediate scrutiny burden will frequently require the government to identify evidence—or, at least, provide sound reasoning that draws reasonable inferences based on substantial evidence, courts will generally wait until the summary judgment stage of the litigation to determine if the burden has been carried as a matter of law.") (cleaned up).[6] Determining whether a law is narrowly tailored is ordinarily a "rigorous and fact-intensive" inquiry. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 372–73 (3rd Cir. 2016) (citing *McCullen*, 573 U.S. 464).

Regardless of whether the Act is subject to strict or intermediate scrutiny, the better answer is to deny the motion to dismiss. Without a developed record, it is not possible to answer the "narrowly tailored" question in this case at this motion-to-dismiss stage. To be sure, the Commissioner has identified government interests to justify the Act: "The Act is meant to provide assistance and protection to students considering enrolling in private postsecondary institutions and programs by establishing policies and procedures to assure the authenticity and legitimacy of the programs." Def.'s Mem. in Supp. at 15. But there are two problems with the Commissioner's justification. First, the Commissioner cites Minn. Stat. § 136A.61 to demonstrate the Act's purpose. Section 136A.61 is a legislative declaration generally stating that regulating the legitimacy of colleges, universities, and postsecondary education is in the best interest of Minnesotans. But § 136A.61 sets out the purpose of the *Private and Out-of-State Public Postsecondary Education* Act, not the

---

[6] The Second Circuit in *Brokamp v. James*, 66 F.4th 374, upheld the district court's dismissal of a First-Amendment challenge to a law subject to intermediate scrutiny. But in that case, the court had before it a record with "detailed at length findings made by the New York legislature." *Id.* There is no comparable record here.

16

Private Career School Act, Minn. Stat. 136A.82–.834. Armstrong is not a college, university, or postsecondary school, and § 136A.61 is inapplicable to Plaintiffs. *See supra* Parts I and III.A. Second, this case is in its infancy and the Commissioner has not provided (and could not appropriately provide at this stage) any evidence that the Act advances at least important governmental interests and does not burden substantially more speech than is necessary.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Dennis Olson Jr.'s Motion to Dismiss [ECF No. 17] is **DENIED**.

Dated: July 24, 2024                                     s/ Eric C. Tostrud
                                                        Eric C. Tostrud
                                                        United States District Court